Wade L. Woodard, ISB No. 6312
Haley K. Krug, ISB No. 10442
KIRTON MCCONKIE
999 W. Main St., Ste. 100
Boise, ID 83702
(208) 370-3325
wwoodard@kmclaw.com
hkrug@kmclaw.com

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUNTERRA DARDENNE PRAIRIE OC, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BEAZLEY INSURANCE COMPANY, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, AND BAD FAITH**<br><br>**JURY DEMANDED** |

Sunterra Dardenne Prairie OC, LLC ("Sunterra"), for its complaint against Beazley Insurance Company, Inc. ("Beazley"), alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Sunterra is a limited liability company organized under the laws of Idaho with its principal place of business in Idaho Falls, Idaho.

2. Beazley is an insurance company organized under the laws of Connecticut with its principal place of business in Farmington, Connecticut. Beazley is authorized to do business and does business in Idaho.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because plaintiffs and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

**COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, AND BAD FAITH** - 1

4. This Court has personal jurisdiction over Beazley because Beazley insures Sunterra, a resident of the State of Idaho.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to the claims herein occurred in the District of Idaho.

## GENERAL ALLEGATIONS

### A. Sunterra's Loss

6. Sunterra operates Sunterra Springs Dardenne Prairie, a 38-bed skilled nursing facility located in Dardenne Prairie, Missouri.

7. On or about November 20, 2020, Sunterra entered into a loan transaction with Key Equipment Finance, a Division of KeyBank, N.A. ("KeyBank"), to borrow funds for the purchase of medical equipment from Medline Industries, Inc. ("Medline") for use in the Dardenne Prairie facility.

8. Sunterra's loan transaction with KeyBank was documented by a Promissory Note and Master Security Agreement and assigned a KeyBank loan account number. Under the terms of the Promissory Note, Sunterra became obligated to repay KeyBank the principal sum of $575,000, plus interest, in 60 consecutive monthly installments.

9. Prior to the loan's November 20, 2020 closing date, Sunterra received a fraudulent e-mail purportedly generated by its Chief Financial Officer directing that Medline's payment information be "updated" in the loan documents to reflect new wire transfer instructions.

10. Sunterra, having no reason to question the e-mail's authenticity, provided the fraudulent wire instructions to KeyBank to be included with the loan documents.

11. Unbeknownst to Sunterra and KeyBank, the wire instructions received by Sunterra were not, in fact, sent internally. Instead, they were sent by a third-party who had

obtained information about the transaction by improper means and set up an imposter e-mail account posing as Sunterra's Chief Financial Officer.

12.     Sunterra did not discover the fraud until January 2021, when Medline contacted Sunterra to inquire about payment for the medical equipment Sunterra had purchased, which Medline had not received.

13.     On the loan's closing date, KeyBank had acted pursuant to the fraudulent wire transfer instructions and transferred the $395,937.91 due to Medline to a bank account belonging to someone else.

14.     Idaho Falls Police investigated and determined the account to which KeyBank had transferred Sunterra's loan proceeds was closed on February 1, 2021, due to a "forced takeover hack." All of the funds had been removed, resulting in the complete loss of the $395,937.91 transferred from Sunterra's account with KeyBank (the "Loss").

15.     Sunterra was required to obtain alternative financing, with interest, to pay Medline for the medical equipment it had purchased.

16.     Sunterra further remains obligated to repay the entire amount of the loss to KeyBank under the terms of the Promissory Note and in fact, continues to pay on that note.

**B.      The Policy**

17.     Beazley sold its Beazley Breach Response Policy No. V28A44200201 to Sunterra for policy period July 1, 2020 to July 1, 2021 (the "Policy").

18.     The Policy includes an eCrime Insuring Agreement, which provides under subpart (1) that Beazley will "indemnify the Insured Organization for any direct financial loss sustained resulting from . . . **Fraudulent Instruction** . . . that the **Insured** first discovers during the Policy Period."

19.     The Policy defines "Fraudulent Instruction" as:

the transfer, payment or delivery of **Money** or **Securities** by an **Insured** as a result of fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions provided by a third party, that is intended to mislead an **Insured** through the misrepresentation of a material fact which is relied upon in good faith by such **Insured**.

20. The Policy's eCrime Insuring Agreement further provides, under subpart (2), that Beazley will indemnify "indemnify the Insured Organization for any direct financial loss sustained resulting from . . . **Funds Transfer Fraud** . . . that the **Insured** first discovers during the Policy Period."

21. The Policy defines "Funds Transfer Fraud" as:

the loss of **Money** or **Securities** contained in a **Transfer Account** at a **Financial Institution** resulting from fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions by a third party issued to a **Financial Institution** directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by the **Insured Organization** at such institution, without the **Insured Organization's** knowledge or consent.

22. The Policy includes a $100,000 limit of liability for Fraudulent Instruction and a $250,000 limit of liability for Funds Transfer Fraud.

23. The Policy further provides for a $25,000 deductible applicable to "each loss."

**B.  Sunterra's Tender to Beazley and Beazley's Denial of Coverage**

24. Sunterra timely tendered a claim to Beazley under the Policy for indemnification of the Loss.

25. Beazley denied coverage by letter dated March 10, 2021 on the basis Sunterra did not suffer a "direct financial loss" due to either "Fraudulent Instruction" or "Funds Transfer Fraud" under the Policy.

26. To date, Beazley has not paid any amount to indemnify Sunterra for its Loss pursuant to the Policy.

**COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, AND BAD FAITH** - 4

## CAUSES OF ACTION

### I. FIRST CAUSE OF ACTION: BREACH OF CONTRACT

27. Sunterra incorporates the foregoing allegations as if fully set forth herein.

28. The Loss constitutes "direct financial loss" sustained by Sunterra resulting from "Fraudulent Instruction" as defined by the Policy.

29. The Loss constitutes "direct financial loss" sustained by Sunterra resulting from "Funds Transfer Fraud" as defined by the Policy.

30. All conditions precedent and subsequent to coverage under the National Union Policy have been satisfied.

31. No exclusions apply.

32. Beazley is obligated under the Policy to indemnify Sunterra for the Loss.

33. Beazley has breached its obligations under the Policy in denying coverage for the Loss and failing to pay any amount to indemnify Sunterra for the Loss.

34. As a direct and proximate result of Beazley's breach, Sunterra has suffered damages in the amount of its Policy benefits, interest, and attorneys' fees.

### II. SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT

35. Sunterra incorporates the foregoing allegations as if fully set forth herein.

36. The rights and obligations of the parties under the Policy depend in whole or in part upon a construction of the contract's terms, which the parties dispute.

37. Pursuant to 28 U.S.C. § 2201, Sunterra is entitled to a declaratory judgment that Beazley is obligated to indemnify for the Loss in accordance with the Policy's terms.

### III. THIRD CAUSE OF ACTION: INSURANCE BAD FAITH

38. Sunterra incorporates the foregoing allegations as if fully set forth here.

39. Beazley owes a duty of good faith and fair dealing to its first-party insured, Sunterra, in performing the obligations of the Policy.

40. Beazley breached its duty of good faith and fair dealing when it denied coverage based on an intentional and unreasonable misapplication of the Policy's terms.

41. Beazley's conduct as described above fell below the industry standards for good faith claims handling set forth in Idaho's Unfair Claim Settlement Practices Act, Idaho Code § 41-1329, including but not limited to:

- Misrepresenting pertinent facts and/or policy provisions;
- Failing to adopt and/or implement reasonable standards for the investigation of claims;
- Refusing to pay claims without conducting a reasonable investigation based upon all available information; and
- Failing to provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim.

42. Beazley's obligation to indemnify Sunterra for the Loss under the Policy is not fairly debatable.

43. Beazley's failure to pay is not the result of a good faith mistake.

44. As a direct and proximate cause of Beazley's breach of its duty of good faith and fair dealing, Sunterra has suffered extracontractual damages in amounts to be proven at trial.

## JURY DEMAND

45. Sunterra demands a jury trial pursuant to Federal Rule of Civil Procedure 38 on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Sunterra prays for judgment in favor of the Sunterra and against Beazley as follows:

A. For damages in such amounts as may be proven at trial;

**COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, AND BAD FAITH** - 6

B. For a declaration Beazley is obligated to defend and indemnify Sunterra for the Loss;

C. For all attorneys' fees and other legal expenses incurred herein pursuant to Idaho Code §41-1839, §12-120(3), and/or other applicable law;

D. For prejudgment interest; and

E. For such other relief as the Court may deem just and proper.

DATED this 15th day of October, 2021.

KIRTON MCCONKIE

*/s/ Wade L. Woodard*
Wade L. Woodard

*Attorneys for Plaintiff*

**COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, AND BAD FAITH** - 7

4844-5744-5628.v2